## HAROLD CARLSON, A MINOR BY AND THROUGH HIS GUARDIAN, PETER G. ANDERSON v. JOHN BARTON PAYNE, AS AGENT, ETC.[1]

December 16, 1921.

No. 22,517.

**Master and servant — negligence of master sustained by evidence.**
1. The evidence is sufficient to sustain the finding that plaintiff's injuries resulted from the negligence of defendant.

**Charge to jury — contributory negligence.**
2. The instruction in respect to contributory negligence was sufficiently favorable to defendant.

**New trial — verdict excessive.**
3. The verdict is excessive and a new trial is granted, unless plaintiff shall consent that it be reduced to the sum of $45,000, in which event a new trial is denied.

Action in the district court for Hennepin county to recover $75,000 for injuries received while in the employ of the Great Northern Railway Company. The amended answer alleged contributory negligence and assumption of risk. The case was tried before Bardwell, J., and a jury which returned a verdict for $57,789.77. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Dille, Hoke, Krause & Faegre,* for appellant.
*Olof L. Bruce,* for respondent.

[1]Reported in 186 N. W. 291.

Taylor, C.

The plaintiff recovered a verdict of $57,789.77 for personal injuries and the defendant appeals from an order denying a new trial.

The action was brought under the Federal Employer's Liability Act. The accident happened while the crew of which plaintiff was a member were engaged in making up a train in the yards of the Great Northern Railway Company in the city of Minneapolis. The engine was pushing a string of cars from the lead track upon a switch track. Plaintiff was riding the head car for the purpose of setting the brakes after a part of the cars had been uncoupled from the remainder of the train. He claims that the foreman of the crew signaled the engineer to slow down; that instead of doing so the engineer set the brakes and brought the engine to a sudden stop, and that this gave such a violent, unusual and unexpected jerk to the car on which he was riding that he was thrown over the end of it upon the track. The wheels of the car passed over his arms, crushing them so badly that it was necessary to amputate both arms between the elbow and shoulder.

The defendant, in effect, concedes that the plaintiff presented evidence tending to show that the accident resulted from a violent and unusual jerk caused by the negligence of the engineer in applying the brakes as in an emergency stop, instead of merely slowing down as directed by the signal, but argues that the evidence that the engineer simply slowed down in the manner usual and expected in such cases is so much more reasonable that the court ought not to allow the finding of negligence to stand. This finding is supported by direct and positive evidence, and, under long established rules, the conclusion reached by the jury cannot be disturbed.

The defendant challenges the instruction defining the effect to be given to contributory negligence under the Federal statute. This instruction was clearly erroneous, and the plaintiff concedes that it was erroneous. But the instruction, so far as it stated a rule for the guidance of the jury, was more favorable to the defendant than the statute warranted. It must be conceded, however, that the instruction lacked clearness. It is upon this fact that defendant bases his claim of error. The plaintiff insists that there was no evidence of contributory negligence and that the instruction did not affect the result in any way.

The plaintiff testified that he saw the slow down signal and knew that ordinarily it would be followed by a slight jerk of the cars; that he had been instructed that under such circumstances a man on top of a car should stay in the center and be on his guard against the jerk, and that following his usual custom he took a position in the center of the car and braced himself for the usual jerk. He is contradicted to some extent by a witness who saw him at the instant of the accident, and who testified that he appeared to be walking toward the brake on the front end of the car. From this evidence the jury might, perhaps, have found that he was guilty of contributory negligence in failing to take the usual precautions to guard against the expected jerk. But the claim that he was guilty of contributory negligence, although alleged in the answer, does not appear to have been urged to any appreciable extent during the trial. The defendant based his defense on the ground that there was no negligence in operating the train and that the injury resulted from a risk assumed by plaintiff, and seems to have placed little, if any, reliance on the claim of contributory negligence. Neither party made any request for instructions, and neither took any exception, at the trial, to the instructions as given, or called the attention of the court to the ambiguity and lack of clearness in the language used. In view of all the circumstances and of the fact that the definite statements in the instruction were unduly favorable to the defendant, we think he could not have been prejudiced by the fact that some of the language used may have been so indefinite as to convey little or no meaning to the jury.

Defendant relies mainly on the contention that the verdict is excessive. The verdict is for $57,500 with an additional allowance of $289.77 for fees of doctor, hospital and nurse, making a total of $57,789.77. Plaintiff was 20 years of age at the time of the trial, and has a life expectancy of 42.20 years according to the American Experience Table of Mortality. His injuries are very serious. He lost both arms between the elbow and shoulder, and the remaining portion of his right arm is only about six inches in length and of his left arm only about four inches in length. Although artificial arms have been devised of such delicate and ingenious mechanism that unfortunates who have

lost their natural arms accomplish wonderful results with them, yet, if plaintiff were fitted with such artificial arms, the stumps of his natural arms to which they would be attached are so short that it is problematical to what extent, if at all, he would be able to make a beneficial use of them. He requires an attendant to feed him, to dress and undress him, and to attend to his personal needs. He made a good recovery and is in good health aside from the loss of his arms. He is entitled to very substantial damages, but the amount awarded is considerably larger than has ever been sustained by this court for any sort of a personal injury. While there are many injuries for which money is no compensation, yet, as said in Padrick v. Great Northern Ry. Co. 128 Minn. 228, 150 N. W. 807, L.R.A. 1915F, 1, it is apparent that legislatures or courts must, on grounds of public policy, place some limit upon the amount of recovery in such cases. After a careful consideration of the matter, we have reached the conclusion that there should be a new trial, unless plaintiff shall consent to reduce the verdict to the sum of $45,000. This sum is larger than has ever before been sustained by this court. If it were put at interest at the rate of 6 per cent it would produce an annual income of $2,700, if at the rate of 5 per cent an annual income of $2,250, and still leave the principal intact.

The order appealed from is reversed and a new trial granted, unless, within 10 days after the filing of the remittitur in the court below, the plaintiff shall file a written consent that the verdict be reduced to the sum of $45,000. In the event that such consent be filed within the time stated the order shall be and is affirmed.

DIBELL, J. (dissenting).

The extent of the plaintiff's injuries is accurately stated in the prevailing opinion. His physician says he will always require an attendant. We can think in terms of hope, in view of the results that are being accomplished in the rehabilitation of maimed men, of a time when he will be able to make serviceable use of the stumps of his arms in caring for himself, and that he may be able to do useful service in some line of endeavor, and that his life will not be devoid of enjoyment or usefulness. My own view is that he will do many things, and that his

disability will not be as great as is claimed in his behalf. Much depends upon his ambition and determination and natural aptitude. The award is of a large amount for a great disability. I am content that the composite judgment of a jury of practical men, approved by the trial court, fix the damages, and so I dissent from a reduction.