# WALTER PRICE v. AWALD W. GRIEGER.[1]

May 6, 1955.

No. 36,344.

---

[1]Reported in 70 N. W. (2d) 421.

*Samuel P. Halpern, William T. Johnson,* and *Louis B. Schwartz,* for appellant.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for respondent.

THOMAS GALLAGHER, JUSTICE.

In an action for damages for personal injuries sustained by plaintiff struck by defendant's car, the jury returned a verdict for defendant. This is an appeal from an order denying plaintiff's motion for a new trial.

On appeal plaintiff contends principally that the trial court erred (1) in permitting a witness to refresh her memory from her shorthand notes of statements made by plaintiff within five days of the accident and barred from evidence by virtue of M. S. A. 602.01 and thereafter to testify as to what plaintiff had said at such time; and (2) in receiving in evidence part of a written statement signed by a witness shortly after the accident, wherein the witness related a conversation with another witness in the presence of plaintiff immediately after the accident, in which statements were made by the two witnesses giving rise to the conclusion that when struck plain-

tiff was intoxicated due to his drinking "canned heat" prior to the accident.

The accident occurred May 31, 1951, on highway No. 10, near Hastings when plaintiff, a pedestrian thereon, was struck and seriously injured by defendant's car. On June 5, 1951, Mrs. Mabel Vandersteen, a stenographer, was employed by Mercury Indemnity Company, defendant's insurer, to accompany their representative, Daniel Sears, to St. Raphael's Hospital, where plaintiff was confined, to take shorthand notes of an interview with him relating to the accident. At the hospital the interview was taken down in shorthand by Mrs. Vandersteen. Later she transcribed it and forwarded the transcription to Mr. Sears. It was not signed by plaintiff and no copies were forwarded to him. It is not disputed that at the time it was taken drugs and sedatives had been administered to plaintiff to ease his pain.

At the trial, to show that the statements made by plaintiff as noted by Mrs. Vandersteen were inconsistent with plaintiff's testimony, Mrs. Vandersteen, after testifying that she had no independent recollection of the statements, was asked to refer to her shorthand notes to refresh her memory and then to relate what plaintiff had said at the interview. Upon objection of plaintiff's counsel that § 602.01 prohibited the use of such statements where no copy thereof had been given to the injured person within 30 days, the trial court ruled:

"* * * there is a statutory provision that bars a statement of this kind, that is a statement taken unless a copy was given to this man within a certain time after it was taken, which wasn't done, and the statement itself is excluded, but this Court has ruled that you may testify as to what questions were made or questions put and answers made, refreshing your recollection from the notes, but you may not read the direct answers."

Thereafter, the witness was permitted to refer to her shorthand notes and testify as to the answers made by plaintiff to the questions asked by Mr. Sears during the interview.

As to the second contention, the record indicates that on July 30, 1951, James Dodge, who had assisted at the accident and helped

transport plaintiff to the hospital, had signed a written statement prepared by a representative of the insurer, wherein the following was set forth:

"* * * While we were cutting the clothes [plaintiff's] off, Sontag [the ambulance driver] made the remark that it was a good thing that Price was drunk because of the injuries. I said that it looked like a canned heat drunk and Price mumbled 'I never use canned heat.'"

Mr. Sontag testified as a witness for plaintiff but had made no reference to the statement attributed to him as above, nor as to whether he had observed that plaintiff had been drinking. He testified that "both of his [plaintiff's] legs were broken"; that while at the hospital he could not say whether plaintiff was conscious or not; and that plaintiff had "mumbled" in response to questions asked him there.

Mr. Dodge, testifying for plaintiff, stated that he did not smell any liquor on the latter at the time of the accident. He admitted that he had signed the statement above referred to. He testified that when plaintiff talked "he mumbled—talked heavy"—"like he had been hit about the face." He was asked if he recalled Mr. Sontag making a remark at the hospital about plaintiff's "apparent drinking habits or his use of intoxicants." This was objected to by plaintiff's counsel, but the court ruled that since the conversation was in the presence of plaintiff, the question was proper. The witness thereupon replied there was such remark and that plaintiff had replied to it. He was then asked to repeat the remark and the reply, but before he could do so, counsel for defendant offered the statement in evidence and over objection of plaintiff's counsel as to foundation, the statements attributed to plaintiff, to Sontag, and to Dodge as above quoted were received and read to the jury.

■ Section 602.01[2] is divisible into two parts, one of which creates the presumption of fraud as to any statement taken from an injured

[2]"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent in the trial of any action for damages for injuries sustained by such person

person within 30 days after his injuries in the trial of any action therefor; and the other of which prohibits its use in evidence unless the injured party is given a copy of it within 30 days. No such copy was furnished plaintiff here. The statement was taken in shorthand, and a transcription thereof made and mailed to the insurer but not to plaintiff. The trial court correctly ruled that the transcription was inadmissible under the statute. This was circumvented by having the witness who had taken the shorthand notes refer thereto to refresh her memory and then relate in evidence plaintiff's responses to the questions he was asked relative to the accident as noted therein. In permitting this procedure, we feel the trial court was in error. The statute seeks to prevent unfair practices in the procurement of statements from injured parties. Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260. It does not specify that such statements be signed, and it would seem that if the obvious purpose of the statute is to be fulfilled *any* written statement or memorandum taken under the circumstances described, whether in shorthand, longhand, or typed, or any statement recorded by tape, wire, or otherwise would be encompassed within its terms. The rejection of a transcription of shorthand notes of such a statement would afford no statutory protection if the contents thereof are nevertheless received by the simple device of having the witness refresh her memory from the shorthand notes and thereafter relate plaintiff's responses as contained therein.

The situation is not unlike that in Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, which involved construction of § 169.09, subd. 13. This section then provided that accident reports of police officers required to be filed with the commissioner of highways under § 169.09, subd. 8, were for the confidential use of the department for accident prevention and should not be used as evidence in any trial arising out of an accident. It further specified that no person should be examined or testify as to the making of such a report or the con-

---

or for the death of such person as the result of such injuries. No statement can be used as evidence in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made."

tents thereof.[3] A police officer filing such a report was asked to refresh his memory by reference to memoranda upon which his report was based and to testify therefrom. His testimony was excluded under § 169.09, subd. 13, and in approving its rejection this court stated (219 Minn. 570, 18 N. W. [2d] 457) :

"To admit testimony based upon the statements or memoranda taken for the purpose of preparing or making the report given immunity by the statute would circumvent the very intent and purpose of the act. Therefore, the evidence was inadmissible."

See, also, Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850. We feel that the reasoning which governed the cases cited is applicable here and based thereon we must hold that the court erred in permitting the procedure described.

■ Our decision in Lovel v. Squirt Bottling Co. 234 Minn. 333, 48 N. W. (2d) 525, is not in conflict with this conclusion. There we held that, while a trial court might properly refuse to receive in evidence as an exhibit a statement originally taken in shorthand, nevertheless the court reporter taking such shorthand notes might refresh his memory therefrom and testify as to admissions of defendant therein which tended to impeach his subsequent testimony. Section 602.01 was not involved as the statement taken was not from an injured party suing to recover for his injuries. Likewise, in Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450, § 602.01 was not involved. There we held that reference might be made to a transcription of shorthand notes in impeaching a witness and that, under the best-evidence rule, it was not essential that the notes rather than the transcription be used for such purpose since the notes did not constitute the written instrument but only a memorandum thereof. This is not inconsistent with our ruling here that *any* written statement taken from an injured party within the period prescribed by § 602.01, whether it be designated "memorandum" or otherwise, or

[3] L. 1947, c. 114, § 1, amended § 169.09, subd. 13, to permit a person filing the required report to testify as to "facts within his knowledge." See, Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750; Rockwood v. Pierce, 235 Minn. 519, 51 N. W. (2d) 670, 36 Minn. L. Rev. 540.

whether it be in shorthand or otherwise, falls within the protective features of the enactment.

■ We have some doubt as to the sufficiency of the foundation for receiving in evidence the written statement signed by the witness Dodge. Ostensibly, it was offered to impeach his testimony. While prior inconsistent statements may be received to impeach a witness, before this can be done, it must appear that there is an inconsistency between the statement and the testimony of the witness. Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40; O'Neill v. Minneapolis St. Ry. Co. 213 Minn. 514, 7 N. W. (2d) 665. The witness must have his attention directed to the supposed contradiction and be given the opportunity of admitting, denying, or explaining it. Hammond v. Dike, 42 Minn. 273, 44 N. W. 61. If the prior statement is embodied in a writing, the witness should be allowed to examine it. Milliren v. Federal L. Ins. Co. 186 Minn. 115, 242 N. W. 546; McDonald v. Bayha, 93 Minn. 139, 100 N. W. 679. If thereafter he denies or fails to recollect making the inconsistent statement, it may be offered for the purpose of impeaching him. Swift v. Withers, 63 Minn. 17, 65 N. W. 85; Ladd v. Newell, 34 Minn. 107, 24 N. W. 366. If the witness admits unequivocally that the inconsistent statement was made, he has thereby impeached himself. There is a conflict in the decisions as to whether the statement is then admissible. A number of courts have held that, since the witness has been impeached, there is no further materiality in the written statement and it should not be received. Babbitt v. Say, 120 Ohio St. 177, 165 N. E. 721; Wallace v. Harrison, 218 Miss. 153, 65 So. (2d) 456; Sloan v. State, 129 Tex. Cr. 131, 84 S. W. (2d) 484; cf. Jaenisch v. Vigen, 209 Minn. 543, 297 N. W. 29; see, McCormick, Evidence, § 37; 58 Am. Jur., Witnesses, § 780; 70 C. J., Witnesses, § 1298. There are a number of decisions, however, to the contrary. People v. Schainuck, 286 N. Y. 161, 36 N. E. (2d) 94; Wachs v. Commercial Travelers Mut. Acc. Assn. 283 App. Div. 29, 125 N. Y. S. (2d) 857; see, 3 Wigmore, Evidence (3 ed.) § 1037. Here Dodge admitted the remarks set forth in the signed statement, and whatever inconsistency was indicated thereby was evident to the jury. The reception of the statement in evidence and

the reading of the remarks therein to the jury appear to have added nothing to the situation, but insofar as it related only to the remarks of Dodge, perhaps no harm may have resulted from this procedure.

■ Regardless of the ultimate admissibility of Dodge's prior statement, however, the procedure followed resulted also in the admission of statements ascribed to Sontag and to plaintiff. These were read to the jury and no doubt created the impression that plaintiff was intoxicated at the time of the accident as the result of his use of "canned heat" or other strong stimulants. There was no foundation whatever for the admission of Sontag's statement carrying this suggestion. He had previously testified and was asked nothing with reference to plaintiff's condition or to the statement ascribed to him. Without such preliminary foundation, we can conceive of no basis upon which that part of the statement attributed to him should have been received. Bosell v. Rannestad, *supra;* O'Neill v. Minneapolis St. Ry. Co. *supra.*

■ Plaintiff had testified that prior to the accident he had consumed several bottles of beer but denied using anything stronger. While it has been held that the impeaching statement of a party to an action may be introduced without the preliminary foundation required for that of a witness (Lovel v. Squirt Bottling Co. *supra;* Johnson v. Farrell, 210 Minn. 351, 298 N. W. 256), we do not feel that this rule permitted reception of the statement here ascribed to plaintiff. The comment attributed to him that "I never use canned heat" does not impeach any of his prior testimony and certainly is not an admission of intoxication or the use of alcoholic stimulants other than beer. At the time it was supposed to have been made, he had just arrived at the hospital and was in serious condition, bleeding, with the bones of both legs shattered. Strong drugs to ease his pain had been administered to him. The fact that he then denied the suggestion of Dodge that he had been using "canned heat" was not, in our opinion, an admission, tacit or otherwise, of intoxication or the use of alcoholic stimulants other than those admitted to have been used by him. It follows there was error in receiving in evidence that part of Dodge's statement which attributed the above remark

to him. That it created the impression of extreme intoxication and was thus greatly prejudicial to his case is so obvious that no discussion of this point should be necessary.

■ Appellant has assigned several additional errors. Because the circumstances under which they took place are not likely to arise in the next trial, we deem it unnecessary at this time to determine questions relative thereto.

The order appealed from is reversed and a new trial ordered.

Reversed.

[1]Reported in 70 N. W. (2d) 409.